IN THE UNITED STATES DISTICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ANTHONY MAURICE BONE EL,         )
                                 )
                Plaintiff,       )
                                 )
        v.                       )         1:17CV445
                                 )
GEORGE T. SOLOMON, JACK CLELLAND )
and R. MCNEIL,                   )
                                 )
                Defendants.      )

## ORDER, MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court for a recommended ruling on Defendants George E. Solomon, Jack Clelland, and R. McNeil's motion for summary judgment. (Docket Entry 60.) Plaintiff Anthony Maurice Bone-El filed a brief in opposition to Defendants' motion. (Docket Entry 64; *see also* Docket Entries 69-71.) Plaintiff also filed a motion to appoint counsel (Docket Entry 67) and a motion to permit additional discovery (Docket Entry 68). For the reasons that follow, the undersigned will deny Plaintiff's motion for appointment of counsel, grant Plaintiff's motion to permit additional discovery, and recommend that Defendants' motion for summary judgment be granted.

### I. BACKGROUND

Plaintiff in this action filed a Complaint alleging a violation of his civil rights pursuant to 42 U.S.C. § 1983. (Complaint ("Compl."), Docket Entry 2.) At the time of the alleged incident, Plaintiff was an inmate at Albemarle Correctional Institution ("Albemarle CI"), a

facility within the North Carolina Department of Public Safety ("NCDPS").[1] (*Id.* at 4.)[2] Plaintiff alleges that he has been denied his constitutional right to practice his faith as a member of the Moorish Science Temple of America ("MSTA"). (*Id.* at 5-9.) He contends that members of the MSTA are "deem[ed] to be Moslem in the truest sense of both terms and word." (*Id.* at 5.) Plaintiff asserts that, because he is Moslem, he is required to have a prayer rug, prayer beads, and a kufi to practice his MSTA faith. (*Id.*) He further contends that the Islam faith (and, therefore, MSTA) requires a prayer rug when prostrate praying three times a day. (*Id.* at 5-8.) Plaintiff states that Defendants' refusal to give him a prayer rug forces him to "prostrate on a dirty floor." (*Id.* at 8.) Plaintiff has used someone else's prayer rug but is unsure when the person will want it back. (*Id.*) As a result of Defendants' actions, Plaintiff claims that his First Amendment right to free exercise of his religion has been violated, and he demands declaratory, injunctive, and monetary relief. (*Id.* at 10; *see also* Am. Compl., Docket Entry 13.)

On August 13, 2020, Defendants filed a motion for summary judgment, arguing that Plaintiff's claim fails because Defendants have not substantially burdened Plaintiff's ability to exercise his religion. (Docket Entry 60.) In support of their motion for summary judgment, Defendants submitted the declaration of Chaplain Betty Brown, NCDPS's Director of Chaplaincy Services since 2003. (Betty Brown Declaration, Docket Entry 62-1.) As the Director of Chaplaincy Services, her duties and responsibilities include formulating and

---

[1] It appears that Plaintiff is currently housed at Albemarle CI.

[2] All citations in this recommendation to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

providing professional supervision of chaplaincy services. (*Id.* ¶ 4.) More specifically, she provides guidance and assistance for the religious programs and services to all the facilities within North Carolina prisons. (*Id.*)

Ms. Brown avers that NCDPS provides written guidance to NCDPS administrators, chaplains, and other appropriate staff concerning religious practices and religious paraphernalia. (*Id.* ¶ 5; *see also* Ex. 1 to Brown Decl., NCDPS Religious Practices Resource Guide and Reference Manual ("Manuel"), Docket Entry 62-2.) The Manuel recognizes the MSTA as an approved religion. (Manual at 5.) The Manuel provides guidance on MSTA's basic beliefs, authorized practices, and approved religious property. (*Id.* 5-10.) Before policy concerning a religious practice is written or modified, a division of prison chaplaincy services (1) conducts thorough research on proposed faith practices; (2) seeks guidance from other state prison systems; and (3) consults with recognized authorities within the faith group to determine the tenets and requirements of the faith practice, and how best to accommodate those practices without endangering the health and safety of staff or other inmates, without interrupting prison operations, and without squandering monetary or personnel resources. (Brown Decl. ¶ 8.)

Pursuant to the Manual, members of the MSTA faith are approved to receive a Fez head covering, one national flag of Morocco, one flag of the United States, a picture of the Prophet Noble Drew Ali, a nationality identification card, and certain reading material. (Manual at 7.) Members of the MSTA faith are not authorized to receive prayer beads, prayer rugs, or kufis because those items are not required to practice MSTA. (*Id.*; *see also* Brown Decl. ¶ 9.) Ms. Brown states that the approved items for MSTA worship are related to the basic

3

tenets of that faith's religious beliefs. (Brown Decl. ¶ 10.) Although Plaintiff claims that the MSTA religious group is Moslem (or Muslim) and thus requires a prayer rug and prayer beads (*see* Compl. at 7), Ms. Brown contends that, based upon generally accepted authority, a Muslim may use a blanket, towel, or any other piece of cloth for prostrate praying. (Brown Decl. ¶ 12.) Thus, it is not a violation of the faith practice of Islam to prostrate pray without a prayer rug or prayer beads. (*Id.*)

In response to the summary judgment motion, Plaintiff has filed an affidavit contending that members of the MSTA faith "are the same which is Islam" and that both groups are Muslim. (Anthony Maurice Bone-El Affidavit at 1-2, Docket Entry 65.) He further asserts that members of the MSTA faith should be entitled to possess prayer beads, prayer rugs, and kufis, and be permitted to celebrate Ramadan fasting.[3] (*Id.* at 1-3.) Approximately one month after response briefs were due, Plaintiff filed additional briefs and documents in opposition to Defendants' motion. (*See* Docket Entries 69-71.) He also filed a motion to appoint counsel (Docket Entry 67) and a motion to permit additional discovery (Docket Entry 68).[4]

## II. DISCUSSION

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick*

---

[3] Plaintiff's contentions regarding any violations of Ramadan fasting rights was neither asserted in the prison grievances nor in the Complaint. Thus, the undersigned will not discuss those allegations any further.

[4] The purported "additional discovery" appears to be the additional documents submitted after the response brief was due. (*See* Docket Entries 69-71.)

*v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49.

### 1. Substantial Burden

Plaintiff alleges that Defendants violated his rights under the First Amendment's Free Exercise Clause. "Prison walls do not form a barrier separating prison inmates from the

5

protections of the Constitution." *Turner v. Safley,* 482 U.S. 78, 84 (1987). Prisoners "clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (citation omitted). The Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment. *See Everson v. Bd. of Educ.*, 330 U.S. 1, 15 (1947).

To state a free exercise claim under the First Amendment, a plaintiff must demonstrate that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief.[5] *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). The Fourth Circuit has held that "a substantial burden on religious exercise occurs when a state or local government, through act or omission, put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir.

---

[5] Although not specifically asserted in the Complaint, Plaintiff implicates the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq* in his responsive brief. (*See* Docket Entry 70 at 10-11.) Applying a more stringent protection, RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person" serves to further a compelling government interest and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1. In order to determine whether there has been a violation under RLUIPA, Plaintiff "bears the burden of establishing a prima facie case, showing (1) that he seeks to engage in an exercise of religion, and (2) that the challenged conduct substantially burdens that exercise." *Krieger v. Brown,* 496 F.App'x. 322, 324 (4th Cir. 2012).

RLUIPA and First Amendment claims proceed in two stages, both of which require a showing of a substantial burden on the religious exercise. *See Wright v. Lassiter*, 921 F.3d 413, 418 (4th Cir. 2019) ("At the first stage, which is essentially the same for both [RLUIPA and First Amendment] claims, the plaintiff must show that the prison's policies imposed a substantial burden on his exercise of sincerely held religious beliefs.") (citing *Carter v. Fleming*, 879 F.3d 132, 139-40 (4th Cir. 2018)). Given the recommendation herein that Plaintiff has not demonstrated a substantial burden on the free exercise of his religious beliefs, his claim would also fail under RLUIPA.

6

2006) (internal quotations and citations omitted). In contrast, "[n]o substantial burden occurs if the government action merely makes the religious exercise more expensive or difficult, but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion." *Dellinger v. Clarke*, 172 F. Supp. 3d 898, 902-03 (W.D.Va. 2016) (internal quotations and citations omitted). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." *O'Lone*, 482 U.S. at 349 (quoting *Turner*, 482 U.S. at 89 (1987)). "In assessing [whether there is a substantial] burden, courts must not judge the significance of the particular belief or practice in question." *Lovelace,* 472 F.3d at 187 n.2.

Plaintiff essentially contends that the denial of a prayer rug substantially burdened his right to exercise his religion through prostrate praying. Defendants do not dispute that Plaintiff is a member of the MSTA faith, that members of the MSTA faith consider themselves to be Moslem, or that that members of the MSTA faith are required to prostrate pray daily. Defendants do contend, however, that their actions do not impose a substantial burden on Plaintiff's religious practice.

As stated, a "substantial burden" on the free exercise of religion is one that forces adherents of a religion to modify behavior, to violate beliefs, or to choose between forfeiting governmental benefits and abandoning a religious precept. *Lovelace*, 472 F.3d at 187. Plaintiff here has not demonstrated that Defendant's actions imposed a substantial burden on his religious exercise. NCDPS religious policy recognizes the MSTA faith, and the faith's worship tenet of daily prayer. (Manuel at 5.) Plaintiff does not aver that he has been forbidden by

7

Defendants to prostrate pray. Rather, he contends that is unable to exercise his religion, specifically through praying, without a prayer rug. He does not, however, demonstrate that Defendants' denial of Plaintiff's request for a prayer rug (or prayer beads and a kufi) required him to forego prostrate prayer. Indeed, he admits that he can in fact prostrate pray, and do so on a prayer rug, because he obtained a prayer rug from another inmate, which prayer rug he still possessed at the time of his original Complaint. (Compl. at 8.) These facts do not demonstrate a substantial burden on Plaintiff's free exercise of his right to prostrate pray.

Plaintiff's claim that MSTA adherents require a prayer rug on which to prostrate pray solely because all adherents to Islam (which he says includes those of the MSTA faith) require a prayer rug does not bolster his arguments. (*See* Compl. at 5, 7.) Plaintiff's affidavits and additional MSTA literature shed some light on the interplay between the MSTA faith and Islam, as well as insight on the MSTA's use of a prayer rug. (*See* Docket Entries 71-1, 71-2.) However, they do not validate Plaintiff's contention that Defendant's denial of a prayer rug stops him from practicing his faith.[6]

Ultimately, the Court should not, nor need not, decide whether Plaintiff's free exercise of his right to prostrate pray is essential to his MSTA faith or whether MSTA has a sincere connection to the Islamic faith. *See Krieger*, 496 F. App'x at 325 ("A plaintiff is not required . . . to prove that the exercise at issue is required by or essential to his religion."). However, Plaintiff's general statement that the MSTA faith, in connection with the tenets of Islam,

---

[6] In particular, the Court notes the portion of MSTA literature that addresses the prayer rug. (*See* Docket Entry 71-2 at 8.) While insight is given on the use of the prayer rug, it notably only mentions that the MSTA faith is *required* to pray three times a day. It does not say that prostrate prayer cannot be achieved without the prayer rug.

8

absolutely requires a prayer rug for prostrate praying is unsupported. As previously stated, based upon generally accepted authority, a Muslim may use a blanket, towel, or any other piece of cloth for prostrate praying. (Brown Decl. ¶ 12.) Thus, it is not a violation of the faith practice of Islam to prostrate pray without a prayer rug or prayer beads.[7] (*Id.*) In fact, Plaintiff as much as acknowledged such. (*See* Docket Entry 70 at 9 ("Plaintiff agrees with defendants that a prayer rug, prayer beads, [and a] kufi, is not a requirement of Islam[.]").) *See also Boone v. Morgan*, No. CIV.A. CCB-09-3335, 2011 WL 3163586, at *3 (D. Md. July 26, 2011) (unpublished) ("Neither a knit kufi nor a knit prayer rug are required by the Muslim faith.").

In sum, Plaintiff has not presented evidence supporting his assertion that his religious practice has been substantially burdened by Defendants. The denial of the prayer rug, prayer beads, and a kufi did not require Plaintiff to forego prostrate prayer. In fact, he not only exercised his right to prostrate pray, but did so on a prayer rug from another inmate. (*See* Compl. at 8.) Furthermore, although he professes that the MSTA faith follows the tenets of the Islamic faith, Plaintiff undermines his own arguments of the necessity of the prayer rug, prayer beads, and a kufi by conceding that it is not a requirement of Islam. (Docket Entry 70 at 9.) Having failed to carry his burden to show a substantial burden, Defendants should be entitled to summary judgment.[8]

---

[7] Plaintiff's Complaint infers that, without a prayer rug, he is forced to prostrate on a dirty floor. (*See* Compl. at 7.) Although not binding, another district court held to this point that, "a prayer rug is not essential to Plaintiff praying, rather, the essential requirement for Plaintiff to pray is that the area on which he prays be clean." *Mohammad v. Beard*, No. CIV.A. 05-580, 2007 WL 1439051, at *10 (W.D. Pa. May 16, 2007) (unpublished).

[8] Even if it were determined that there was a substantial burden on Plaintiff's rights, the undersigned concludes that Plaintiff cannot demonstrate that Defendants' acts were conscious or intentional as Defendants simply followed the dictates of the Manuel which provides guidance on the MSTA faith. *See Cherry v. Platt*, No. 3:10-CV-629-RJC, 2012 WL 868897, at *6 (W.D.N.C. Mar. 13, 2012) ("Although

9

### 2. Compensatory/Punitive Damages

The purpose of Section 1983 damages is to compensate individuals for injuries suffered as a result of a constitutional violation.[9] *White v. City of Greensboro*, 408 F. Supp. 3d 677, 693 (M.D.N.C. 2019) (citation omitted). "Where no injury [is] present, no 'compensatory' damages [can] be awarded." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986). Here there is no constitutional damages warranting compensatory damages. Likewise, Plaintiff's claims for punitive damages fail. *See Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987) (internal quotations and citations omitted) (Punitive damages are allowed in § 1983 claims only when the conduct "involves reckless or callous indifference to the federally protected rights of others, as well as for conduct motivated by evil intent").

### 3. Qualified Immunity

To the extent Plaintiff asserts monetary claims against Defendants in their individual capacities, they are entitled to qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability

---

inmates clearly retain their First Amendment right to free exercise of religion in prison, 'negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause.' ") (citing *Lovelace,* 472 F.3d at 201); *Munwakkil v. Johnson*, No. 7:09CV00318, 2010 WL 3585983, at *7 (W.D. Va. Sept. 13, 2010) (Plaintiff "fails to demonstrate that prison officials knew that denial of the requested property items . . . substantially burdened [plaintiff's] religious practice . . . Without knowledge that the property restriction substantially burdened [plaintiff's] religious practices, the defendants' alleged actions . . . did not violate the First Amendment or RLUIPA."), *aff'd*, 407 F. App'x 685 (4th Cir. 2011).

[9] As to any claim under RLUIPA, the Fourth Circuit has held that RLUIPA only authorizes injunctive relief against a state official, irrespective of whether the individual is sued in his or her individual or official capacity. *See Wall v. Wade*, 741 F.3d 492, 496 n.5 (4th Cir. 2014) ("We note at the forefront that Congress did not authorize damages claims against state officials under RLUIPA. *See also Sossamon v. Texas*, 563 U.S. 277, 284-88 (2011) (prohibiting damages claims against state officials in their official capacity); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009) (same for individual capacity).

for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]" (emphasis added)). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 546-47 (4th Cir. 2010) (citation omitted). In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009). Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

Here, Plaintiff has not demonstrated a violation of his constitutional right to free exercise of his religion. Therefore, this Court concludes that Defendants are entitled to qualified immunity. *See Abney v. Coe,* 493 F.3d 412, 415 (4th Cir. 2007) (finding that "[i]f [an official] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there"); *Parker v. Burris,* 2015 WL 1474909, at *8 (M.D.N.C. Mar. 31, 2015) (finding that "the absence of evidence supporting a finding that a constitutional violation occurred satisfies the first prong of the qualified immunity analysis"), *report and recommendation*

*adopted*, No. 1:13CV488, 2015 WL 2169148 (M.D.N.C. May 8, 2015), *aff'd*, 623 F. App'x 82 (4th Cir. 2015).

### 4. Plaintiff's Motions

Plaintiff has filed a motion for appointment of counsel. (Docket Entry 66.) Exceptional circumstances are not present warranting the appointment of counsel. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Moreover, in light of the recommendation herein that no constitutional violation has occurred, appointment of counsel is unnecessary. Thus, Plaintiff's motion will be denied.

As to Plaintiff's motion to permit additional discovery (Docket Entry 68), the undersigned construes the motion as a request to consider the additional documents submitted by Plaintiff that oppose Defendants' motion for summary judgment. (*See* Docket Entries 69-71.) The Court will grant said motion to the extent Plaintiff's additional responsive documents (Docket Entry 69-71) have been considered in the recommendation herein.

## III. CONCLUSION

For the reasons sated herein, **IT IS HEREBY ORDERED** that Plaintiff's motion to permit additional discovery (Docket Entry 68) be **GRANTED**, and Plaintiff's motion for appointment of counsel (Docket Entry 66) be **DENIED.**

**IT IS RECOMMENDED** that Defendants George E. Solomon, Jack Clelland, and R. McNeil's motion for summary judgment (Docket Entry 60) be **GRANTED** and that this action be dismissed.

_____
Joe L. Webster
United States Magistrate Judge

November 6, 2020